IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01286-MSK-NYW

EMILY M. VANCE,

    Plaintiff,

v.

TOLMAR, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(#47)**, the Plaintiff's Response **(#48)**, and the Defendants' Reply **(#50)**.

## JURISDICTION

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis. All evidence is construed most favorably to Ms. Vance.

The Plaintiff Emily M. Vance worked for the Defendant TOLMAR, Inc. ("TOLMAR") as a Project Manager. Throughout 2012, 2013, and early 2014, Ms. Vance was required to take her daughter to therapy appointments, which resulted in her frequently being absent from work or arriving late. Initially, TOLMAR accommodated this and did not require Ms. Vance to make formal requests for time off.

1

In December 2013, Ms. Vance received a performance review that she "fully meets expectations." However, her immediate supervisor, Susan Carter, who had never previously taken issue with her attendance or punctuality, criticized her for her absences and late arrivals. In response to the performance review and Ms. Carter's criticism, Ms. Vance wrote on the performance review,

> I have comments on how my review was presented to me although I do not wish to share as a decision has been made and judgment passed based on one side of the story.

In early 2014, Robyn Vilkaitis, TOLMAR's vice president for human resources, instructed Ms. Vance to submit a formal request for leave under the Family Medical Leave Act ("FMLA") for time off to take her daughter to therapy. Ms. Vance complied and requested leave for 30 to 60 additional therapy sessions. When Ms. Carter saw Ms. Vance's request, she said, "This is ridiculous, why do you need this extra time? You just had time to manage that." But TOLMAR ultimately granted her request, provided that Ms. Vance change her daughter's therapy appointments from Fridays to Wednesdays.

At approximately the same time, Ms. Vance was subjected to unwelcome sexual advances from a co-worker, Scott Pfauth, which included inappropriately touching Ms. Vance on the inner thigh, neck, and shoulders and calling her names such as "sweetie" and "babe". Ms. Vance reported Mr. Pfauth's conduct to Ms. Vilkaitis. Ms. Vilkaitis gave Mr. Pfauth a written warning stating, "If immediate and sustained improvement does not occur, further disciplinary action may result, up to and including termination of employment." Ms. Vilkaitis emailed Ms. Vance, informed her that Mr. Pfauth had been warned, and asked her to report any additional concerns she may have about Mr. Pfauth's conduct. No evidence was presented that Mr. Pfauth continued to make unwelcome sexual advances toward Ms. Vance after Ms. Vilkaitis served him

with the written warning. However, Mr. Pfauth's conduct has negatively impacted Ms. Vance, and she has attended therapy to address its effect on her.

In April 2014, Ms. Vance also made additional leave requests under the FMLA. The first was so that she could undergo back surgery. The second was so that she could have surgery to have her tonsils removed. These requests were granted.

After Ms. Vance returned from FMLA leave for her back surgery, Ms. Carter visited with Ms. Vance at her work station. According to Ms. Carter, Ms. Vance was "abrupt and rude" during this conversation. However, Ms. Vance said that she was not rude to Ms. Carter and related that Ms. Carter told her, "Welcome back", to which Ms. Vance replied, "Thank you." That was the extent of their conversation.

Shortly after returning from FMLA leave for her tonsillectomy, on May 5, 2014, Ms. Carter gave Ms. Vance a "Corrective Action Form". The form stated that Ms. Vance was not performing her job in a satisfactory manner, was rude and/or had altercations with others, and was insubordinate. Ms. Carter demanded that Ms. Vance sign the form. Ms. Vance denied that she had engaged in any of the conduct listed on the form and stated that she wanted to have an attorney review the form before she signed it. Ms. Carter gave Ms. Vance three days to sign and return the form.

On May 8, 2014, Ms. Vance arranged to leave work early. Before she left, she did not return the form. Ms. Carter, TOLMAR's human resources director Mara Hartley, and TOLMAR's vice president of logistics Michelle Mantas called Ms. Vance at 4:45 p.m. to discuss why she had not returned it. Ms. Vance offered to bring the form in either immediately or the next morning by 8:00 a.m. Instead of allowing her to bring the form, Ms. Hartley informed Ms.

Vance that she was suspended and would not have access to the building. She also said that a decision would be made as to her employment by the end of the next day.

On May 9, 2014, Ms. Carter, Ms. Hartley, and Ms. Mantas decided to terminate Ms. Vance's employment with TOLMAR. In her declaration **(#47-3)**, Ms. Hartley attests that the primary reason for Ms. Vance's termination was the failure to return the signed form by May 8.

Based on these facts, Ms. Vance commenced this action. In her Complaint **(#4)**, she asserts six claims: (1) Interference and Retaliation in violation of the Family Medical Leave Act ("FMLA") (2) Sexual Harassment under 42 U.S.C. § 2000e, *et seq.*, (3) Wrongful Termination under Colorado law, (4) Negligent Infliction of Emotional Distress under Colorado law, (5) Intentional Infliction of Emotional Distress under Colorado law, and (6) Breach of Implied Contract under Colorado law. TOLMAR moves for summary judgment **(#47)** on all of Ms. Vance's claims. In her Response **(#48)**, Ms. Vance withdraws her claim for Intentional Infliction of Emotional Distress but otherwise opposes TOLMAR's motion.

## ANALYSIS

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a Motion for Summary Judgment or a Motion for Partial Summary Judgment is: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive

4

law, it is an essential element of the claim.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the conflicting evidence would enable a rational factfinder to resolve the dispute for either party.  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof.  Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial.  *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts—when the movant has the burden of proof and when the non-movant has the burden of proof.  Each context is handled differently.  When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense.  *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law.  However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied.  *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof.  In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The moving party must

5

identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary judgment may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**B. Ms. Vance's FMLA Claims**

    **1. FMLA Retaliation**

The Court will first address Ms. Vance's FMLA retaliation claim. To establish a *prima facie* claim for retaliation under the FMLA, Ms. Vance must come forward with sufficient evidence to show (1) she engaged in activity protected by the FMLA; (2) TOLMAR took an action against her that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *See Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006). If she carries this burden, TOLMAR must articulate a legitimate, non-discriminatory reason for her termination, and Ms. Vance has the ultimate burden of demonstrating that TOLMAR's proffered reason is pretextual. *Id.* at 1170.

TOLMAR does not challenge the first two elements of Ms. Vance's *prima facie* claim. Rather, it argues that there is insufficient evidence to show a causal connection between Ms. Vance's protected activity and her discipline and termination. Ms. Vance argues that the temporal proximity between exercising her FMLA rights and her termination give rise to an inference of causation.

To make a *prima facie* showing of a causal connection between the protected conduct and the adverse action, the employee must come forward with some evidence that would permit an inference of retaliatory motive by the person taking the adverse action. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir.2005). Most often, employees rely on a close temporal proximity between the protected conduct and adverse action. *Id.* A period of less than about three months between protected conduct and adverse action is generally sufficient to support a causal inference. *See Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir.2007). Here, Ms. Carter, Ms. Hartley, and Ms. Mantas decided to terminate Ms. Vance's employment with TOLMAR less than 10 days after she returned from FMLA leave. This constitutes an extremely close temporal proximity between Ms. Vance's exercise of FMLA rights and her termination. Thus, Ms. Vance has presented sufficient evidence to make a *prima facie* showing as to causation.

TOLMAR's proffered non-retaliatory reason for Ms. Vance's termination is that she was insubordinate and performed her work poorly. Thus, the burden shifts to Ms. Vance to show this reason is pretextual.

To show pretext, a plaintiff must offer evidence demonstrating both that the reason proffered by the employer is not true, and that the true reason for the adverse action was retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146-47 (2000). To show that a proffered reason is untrue, a plaintiff may present evidence that reveals weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that would lead a reasonable factfinder to find the proffered reason is untrue. *Plotke v. White,* 405 F.3d 1092, 1102 (10th Cir. 2005). A plaintiff might offer evidence that the employer's reason was post-hoc, or otherwise insincere, but evidence that an

7

employer merely made a subjective mistake in perceiving the facts is not sufficient to show pretext. The Court does not analyze whether an employer's actions were wise, fair, or even factually correct; rather, it looks only at whether the employer "honestly believed its reasons and acted in good faith." *See Bennett v. Windstream Comm'ns., Inc.,* 792 F.3d 1261, 1268 (10th Cir. 2015).

Ms. Vance has come forward with evidence of actual, retaliatory animus. Her supervisor, Ms. Carter, participated in making the decision to terminate Ms. Vance's employment. Ms. Carter had previously made comments disparaging Mr. Vance's request for FLMA leave to attend her daughter's therapy sessions. The factfinder could reasonably conclude that Ms. Carter's prior displayed animus towards Ms. Vance's use of FMLA leave informed TOLMAR's ultimate decision to terminate Ms. Vance's employment. Moreover, as discussed, the decision to terminate Ms. Vance was made within 10 days of her return from FMLA leave, such that the timing of the decision could itself be considered by the factfinder to reflect a retaliatory motivation.

There is also a degree of implausibility to TOLMAR's proffered reason for terminating Ms. Vance's employment. A copy of the Corrective Action Form that Ms. Vance failed to sign and return has been filed with the Court (**#47-7, pp. 21-22**). According to the form, the purpose of having Ms. Vance sign it was for her to acknowledge that she had reviewed the information in the form and had the opportunity to respond to it. The form did not require Ms. Vance to admit or deny engaging in the conduct at issue, nor did it compel her to offer her own version of events. In short, Ms. Vance's return of the form to TOLMAR would necessarily manifest nothing more than the fact that the form was given to Ms. Vance in the first place. In customary employment practices, an employee's refusal to acknowledge receipt of a disciplinary notice is

8

not to terminate the employee, but merely to note on the form that the employee "refused to sign" an acknowledgement stating receipt. Because TOLMAR's decision to terminate Ms. Vance for refusing to simply acknowledge the notice, TOLMAR has arguably so deviated from traditional and commonly-used employment practices as to raise the specter that FMLA retaliation was the true reason for its action.

Additionally, Ms. Vance has presented evidence that she did not refuse to sign the form. She arranged with TOLMAR to leave work early on the day she was required to return the form and forgot to return it before leaving. When Ms. Carter, Ms. Hartley, and Ms. Mantas called to inquire why Ms. Vance failed to return the form, Ms. Vance offered to bring it by immediately (or, at TOLMAR's option, the next morning). Notably, they had called her at 4:45 p.m., which would have given Ms. Vance at least 15 minutes to return the form within the time-frame imposed by Ms. Carter. But they did not allow her to return the form, informing her instead that she was suspended and would not have access to TOLMAR's offices.

Considering the evidence of retaliatory animus and the implausibilities and inconsistencies in TOLMAR's statement that it terminated Ms. Vance's employment for failing to sign the Corrective Action Form, Ms. Vance has come forward with sufficient evidence to create a triable question of whether TOLMAR's reason for her termination is a pretext for FMLA retaliation. Thus, the Court will not grant TOLMAR's request for summary judgment as to Ms. Vance's FMLA retaliation claim.

2. **FMLA Interference**

To establish an interference claim under the FMLA, Ms. Vance must show (1) that she was entitled to FMLA leave, (2) that some adverse action[1] by TOLMAR interfered with her right to take FMLA leave, and (3) that TOLMAR's action was related to the exercise or attempted exercise of her FMLA rights. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). If Ms. Vance makes a *prima facie* showing as to the first two elements, TOLMAR bears the burden on the third element. *Id*. Ms. Vance is not required to show TOLMAR's proffered reason for terminating her is pretext. *Id*.

TOLMAR does not challenge Ms. Vance's ability to make a *prima facie* showing as to the first two elements. Instead, it argues that it can prove Ms. Vance's termination was because she refused to sign and return the Corrective Action Form by May 8, 2014. Ms. Vance argues that there are genuine factual disputes as to whether taking FMLA leave caused her termination.

TOLMAR cites to evidence that all of Ms. Vance's FMLA requests were granted, and she was allowed to return to work after twice taking FMLA leave in April 2014. Further, it produced evidence that Ms. Vance was terminated for insubordination and failing to sign the Corrective Action Form she received on May 5, 2014. This is sufficient to make a *prima facie* showing that Ms. Vance was terminated for reasons unrelated to the exercise of her FMLA rights. However, for the same reasons that Ms. Vance has produced sufficient evidence to make a *prima facie* showing that TOLMAR's proffered reason for terminating her employment is pretextual, she has produced sufficient evidence to create a genuine dispute of fact as to whether

---

[1] Although TOLMAR does not challenge this element, the Court notes that terminating an employee shortly after the employee returns from FMLA leave may constitute adverse action that interferes with the employee's right to take FMLA leave. "To hold otherwise would create a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim." *Campbell*, 478 F.3d at 1288

10

TOLMAR's decision to terminate her was related to the exercise of her FMLA rights. Therefore, the Court denies TOLMAR's request for summary judgment on this claim.

**C. Ms. Vance's Sexual Harassment Claim**

TOLMAR argues that Ms. Vance's sexual harassment claim must be dismissed because Ms. Vance failed to file an administrative claim with either the Equal Employment Opportunity Commission ("EEOC"), the Colorado Civil Rights Division ("CCRD"), or any other appropriate agency prior to filing this lawsuit. Ms. Vance argues that she was not required to do so. *Citing Brooke v. Restaurant Services, Inc.*, 908 P.2d 66, 68 (Colo. 1995).

Ms. Vance brought her claim for sexual harassment under Title VII of the Civil Rights Act. Before filing a lawsuit under Title VII, Ms. Vance must have first exhausted her administrative remedies. *See Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). To do so, Ms. Vance was required to file a charge of discrimination with the EEOC or CCRD. *See* 42 U.S.C. § 2000e-5(e)(1). Ms. Vance concedes that she did not file a charge of discrimination with the EEOC or CCRD alleging sexual harassment against TOLMAR before bringing this lawsuit.

Ms. Vance's reliance on *Brooke* is misplaced. There, an employee asserted claims against her employer sounding in both sex harassment in violation of federal and state statute (which she had exhausted with the EEOC and CCRD) and a tort claim against her supervisor for tortiously interfering with her employment contract with the employer. The trial court dismissed the tort claim, apparently on the grounds that the statutes provided the exclusive remedy for the conduct at issue, but on appeal, the Colorado Supreme Court reversed. The Court held that the federal and state statutes did not necessarily displace common-law tort claims relating to employment, and that an employee was not required to follow the statutory exhaustion scheme when pursuing those <u>tort</u> claims. 906 P.2d at 72 ("we next address the issue of whether a claimant must exhaust administrative remedies under the Act before asserting <u>common law</u>

11

claims in district court. We hold that administrative remedies under the Act must be exhausted only for claims filed pursuant to the Act") (emphasis added). Because Ms. Vance's sex harassment claim here expressly invokes Title VII, Ms. Vance was required to complete that statute's exhaustion requirements before bringing her sex harassment claim.

Therefore, the Court grants summary judgment as to this claim in TOLMAR's favor.

**D. Ms. Vance's Wrongful Termination Claim**

Ms. Vance also asserts a Colorado common law claim for wrongful termination in violation of public policy. The Complaint **(#4)** states that this claim is based on Mr. Pfauth's sexual advances toward her, TOLMAR's failure to discipline him, TOLMAR's instruction to ignore Mr. Pfauth's sexual advances, and Ms. Vance's refusal to comply with that instruction. It alleges, "As a result of [Ms. Vance's] refusal to comply with the directive to ignore sexual advances, [she] was terminated from employment by Defendants on May 9, 2014."

TOLMAR argues that to the extent Ms. Vance's wrongful termination claim is predicated on the same conduct that underlies Ms. Vance's Title VII claim for sexual harassment, the common law claim is effectively preempted. It also argues that Ms. Vance cannot establish the elements of the claim.

The Court need not reach the question of whether the Title VII statutory scheme displaces a common-law claim for wrongful discharge, because it finds that Ms. Vance cannot establish a wrongful discharge claim in any event. To prove a claim for wrongful discharge in violation of public policy under Colorado law, Ms. Vance must show: (i) that TOLMAR directed her to perform an illegal act as part of her job duties or prohibited her from performing a public duty or exercising an important job-related right; (ii) that the action directed by TOLMAR would violate a specific statute or public policy relating to public safety or welfare; and (iii) she was terminated as a result of refusing to perform the act directed by TOLMAR. *Sidlo v. Millercoors, LLC*, ___

Fed.Appx. ___, 2018 WL 1189500 (10th Cir. 2018), *citing Martin Marietta Corporation v. Lorenz,* 823 P.2d 100, 109 (Colo. 1992).

Ms. Vance's wrongful termination claim is predicated upon her contention that, when she brought her allegations of Mr. Pfauth's sexual harassment to her supervisors' attention, her supervisors simply told her to "ignore" Mr. Pfauth's conduct. (Ms. Vance appears to concede that TOLMAR also gave Mr. Pfauth a verbal warning.) She argues that the instruction to her to "ignore" unlawful sexual harassment by a co-worker constitutes a prohibition against her exercising an important job-related right – that is, the right to complain about ongoing harassment. Even assuming—again, without finding – that Ms. Vance can establish the first and second elements of the wrongful termination claim, it is obvious that Ms. Vance cannot establish the third element: that she was terminated because she refused to ignore Mr. Pfauth's harassment. Although Ms. Vance testified that Mr. Pfauth continued to harass her after she complained to TOLMAR and Mr. Pfauth received the verbal warning, Ms. Vance does not dispute that she never reported any other conduct by Mr. Pfauth to anyone at TOLMAR. When asked whether she reported her continued harassment by Mr. Pfauth to TOLMAR, Ms. Vance stated "I didn't have the opportunity to . . . Timing was short and quite frankly, I didn't trust [my supervisor]." Thus, to the extent that Ms. Vance contends that she refused the follow the allegedly-unlawful instruction that she ignore Mr. Pfauth's harassment, she has not come foward with evidence that TOLMAR was aware that she was refusing that instruction,[2] much less that TOLMAR terminated her employment because of that refusal. Indeed, as far as TOLMAR

---

[2] Ms. Vance testified in her deposition that, in response to the instruction to ignore Mr. Pfauth's overtures, she responded "I said I can't just ignore that; it's affecting me." In this context, Ms. Vance's "I can't" ignore the harassment – an observation that carrying out the instruction would be difficult -- is not the same as a statement of <u>refusal</u>, such as "I won't" ignore it.

knew, Ms. Vance's failure to complain further was an indication that she was indeed ignoring any further conduct by Mr. Pfauth. Accordingly, TOLMAR is entitled to summary judgment on Ms. Vance's wrongful termination claim.

### E. Ms. Vance's Negligent Infliction of Emotional Distress Claim

Ms. Vance has also brought a claim for negligent infliction of emotional distress based on TOLMAR's actions related to Mr. Pfauth's unwanted sexual advances. Under Colorado law, to establish a *prima facie* claim for negligent infliction of emotional distress, Ms. Vance must produce evidence showing that (1) TOLMAR's negligent conduct (2) created an unreasonable risk of physical harm that (3) caused Ms. Vance to be put in fear for her own safety; that (4) Ms. Vance suffered physical injury or was in the "zone of danger" created by TOLMAR's negligent conduct; that (5) Ms. Vance's fear had physical consequences or resulted in long-continued emotional disturbance; and that (6) Ms. Vance's fear was the cause of the damages sought. *See Draper v. DeFrenchi–Gordineer,* 282 P.3d 489, 496–97 (Colo.App.2011).

TOLMAR argues that Ms. Vance's evidence is insufficient to make a *prima facie* showing that it engaged in negligent conduct, that its actions created an unreasonable risk of physical harm, or that Ms. Vance suffered physical injury or a physical manifestation of emotional distress. Ms. Vance asserts that TOLMAR acted negligently by only warning Mr. Pfauth and by instructing her to ignore him. She does not address TOLMAR's second argument, but she does state that Mr. Pfauth's conduct and TOLMAR's reaction to it caused her to attend therapy and to take medications.

The Court will not belabor the analysis, because it finds that Ms. Vance has failed to come forward with facts that show that, after she informed TOLMAR of Mr. Pfauth's harassment, TOLMAR took any action that negligently exposed Ms. Vance to a risk of physical

14

harm or placed her in the "zone of danger" of suffering such harm. Under Colorado law, a negligent infliction of emotional distress claim requires proof that the plaintiff either sustained a physical injury as a direct result of the negligent conduct or was in the "zone of danger" of suffering such an injury. *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1211 (10th Cir. 2001); *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo.App. 2011) ("a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences"). Here, Ms. Vance admits that TOLMAR verbally warned Ms. Pfauth to cease his harassment of Ms. Vance. Ms. Vance has not come forward with evidence to show that merely giving a warning to Mr. Pfauth constituted negligence on TOLMAR's part – that is, evidence that would show that it was unreasonable for TOLMAR to assume that Mr. Pfauth would heed the warning he was given and cease his conduct. (For example, Ms. Vance might have shown that Mr. Pfauth ignored similar warnings in the past, or that it was well-known around TOLMAR that verbal warnings would not lead to greater consequences.) At most, Ms. Vance offers only the conclusory statement, unsupported by citation to the record, that "It is foreseeable that [TOLMAR's handling of the incident] would result in Mr. Pfauth continuing his inappropriate behavior towards Ms. Vance." The mere assertion that Mr. Pfauth's continued harassment was "foreseeable" is not a substitute for evidence from Mr. Vance explaining <u>why</u> it was foreseeable.

Nor does Ms. Vance come forward with evidence that, following TOLMAR's warning, Ms. Vance was placed at risk of physical injury by Mr. Pfauth's subsequent conduct. Beyond the conclusory assertion that Mr. Pfauth's harassment "continu[ed]," Ms. Vance's brief does not point to any facts that describe the continued harassment or indicate how it posed a risk of actual

15

physical harm to Ms. Vance. Indeed, Ms. Vance's brief does not even expressly assert that Mr. Pfauth's harassment continued after he was warned by TOLMAR. *See* Docket # 48 at 2 (disputing only that TOLMAR instructed her to bring any further advances by Mr. Pfauth to TOLMAR's attention). Ms. Vance does cite to a scrap of her deposition testimony in which she suggests, obliquely and confusingly, that Mr. Pfauth's conduct continued after he received the warning: "There was continuous still where I would show up, he would automatically show up behind me, or the computer portion, I believe, tapered down but it was addressed through HR and the phone thing. So that aspect I got separated from." Ms. Vance was then asked whether "there was any more touching" after Mr. Pfauth was warned, and she responded "As I recall, yes," but was never prompted to elaborate. In the absence of evidence that Mr. Pfauth, post-warning, engaged in conduct that posed an actual and direct physical risk of harm to Ms. Vance, her negligent infliction claim fails. At most, Ms. Vance has alleged only that her fear of Mr. Pfauth caused her to suffer emotional distress that resulted in physical harm; that is not enough. *Atsepoyi v. Tandy Corp.*, 51 F.Supp.2d 1120, 1127 (D.Colo. 1999) (employee who suffered from employment discrimination, which caused emotional distress leading to physical sickness, failed to allege physical injury requirement of NIED claim).

Therefore, the Court will enter summary judgment against Ms. Vance on her claim for negligent infliction of emotional distress.

**F. Ms. Vance's Breach of Implied Contract Claim**

To establish a claim for breach of an implied employment contract, Ms. Vance must produce evidence showing (1) the existence of an implied contract; (2) her performance under the contract or justification for her nonperformance; (3) TOLMAR's failure to perform under the contract; and (4) harm to Ms. Vance. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). TOLMAR argues that there is no evidence of an implied contract between it and

16

Ms. Vance. Ms. Vance argues that several provisions of TOLMAR's employee handbook constitutes an implied contract.

In general, employment is Colorado is at-will, and an employer may enact, modify, eliminate, or disregard its corporate policies without notice to the employee. However, Colorado law recognizes a limited set of circumstances where employment policies and handbooks can create an implied contract if the circumstances indicate that the employer manifested a willingness to be bound by the terms of that policies and the employee relied on the policies to her detriment. *Anderson v. Regis Corp.,* 185 Fed. App'x 768, 771 (10th Cir.2006), *citing Frymire v. Ampex Corp.,* 61 F.3d 757, 769 (10th Cir.1995). However, the employer may prevent policies and handbooks from having any contractual effect by issuing a clear and conspicuous disclaimer to that effect. *Id.*

TOLMAR contends that it issued just such a disclaimer in this case, and attaches a copy of it. The disclaimer states:

> At TOLMAR neither the employee nor the employer is committed to an employment relationship for a fixed period of time. Employment with TOLMAR is at-will. Either the employee or management has the right to terminate the employment at any time, for any reason. The language used in this employee handbook and any verbal statement by management is not intended to constitute a contract of employment, either expressed or implied, nor is there a guarantee of employment for any specific duration. No representative of TOLMAR, other than the CEO of the organization, has authority to enter into an agreement of employment for any specified period. Such agreement must be in writing, signed by the CEO and the employee.
>
> The contents of the employee handbook are summary guidelines for employees and therefore are not inclusive. This employee handbook supersedes all previously issued editions. Except for the at-will nature of the employment, the organization reserves the right to suspend, terminate, interpret or change any or all of the guidelines mentioned, along with any other procedures, practices, benefits or other programs of TOLMAR. These changes may occur at any time, with or without notice.

17

Ms. Vance does not dispute that she received and read this disclaimer, nor does she argue that the disclaimer was in any way unclear, misleading, or subject to any exception. In fact, Ms. Vance's response does not address the disclaimer at all. The Court finds that this language clearly and unambiguously advises employees that TOLMAR's employment handbook is not intended to create an express or implied employment contract and that the statements of policies may be suspended, terminated, interpreted, or changed "at any time", purely at TOLMAR's discretion. Accordingly, TOLMAR's employee handbook cannot amount to an enforceable promise. TOLMAR is therefore entitled to summary judgment on Ms. Vance's claim for breach of implied contract.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(#47)** is **GRANTED IN PART** and **DENIED IN PART**. It is granted insofar as judgment will enter in favor of TOLMAR on Ms. Vance's claims for Sexual Harassment, Wrongful Termination, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Breach of Implied Contract. Ms. Vance's claims for FMLA retaliation and FMLA interference will proceed to trial.

The parties shall begin preparation of a Proposed Pretrial Order consistent with the instructions in the Trial Preparation Order **(#24)** and shall jointly contact the Court within fourteen days to schedule a Pretrial Conference on Ms. Vance's claims for FMLA retaliation and FMLA interference.

Dated this 23d day of March, 2018

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge